# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 17-11591-WRS |
| | Chapter 12 |
| EDWARD D. SMITH, | |
|     Debtor | |
| | |
| COFFEE FARMERS COOPERATIVE INC., | |
|     Plaintiff | Adv. Pro. No. 18-1068-WRS |
| v. | |
| EDWARD D. SMITH and | |
| TROY BANK & TRUST, | |
|     Defendants | |

**MEMORANDUM DECISION**

This Adversary Proceeding came before the Court for hearing on January 8, 2019, on the Motion for Summary Judgment filed by Defendant Troy Bank and Trust. (Doc. 13). Defendant Troy Bank was present by counsel Allen C. Jones, Plaintiff Coffee Farmers Cooperative, Inc., was present by counsel Jason R. Eubanks, and Defendant Dennis Smith, the Debtor in the underlying Chapter 12 Bankruptcy Case, was present by counsel Collier H. Espy, Jr. The motion is fully briefed. (Docs. 13, 14, 15). The Court heard argument from counsel and took the matter under advisement. For the reasons set forth below, the motion of Troy Bank is granted. The Court concludes that the mortgages in favor of Troy Bank dated August 16, 2002, and May 25, 2006, have priority over the judgment lien of Coffee Farmers dated April 22, 2009.

# I. Facts

## A. The Promissory Notes, Mortgages and Judgment

The material facts of this case are not in dispute. On August 16, 2002, Troy Bank made a loan in the amount of $227,587.72 to Debtor Edward D. Smith and his wife Jan Smith.[1] That indebtedness is evidenced by a Promissory Note of that date (Doc. 13, Ex. A). That indebtedness was secured by a Mortgage of the same date, which was recorded September 5, 2002, in Coffee County, Alabama. (Doc. 13, Ex. B). The August 16, 2002 note was renewed by way of a Promissory Note in the principal amount of $174,238.87, dated May 27, 2005. (Doc. 13, Ex. C). The 2005 note was secured by the 2002 mortgage as it was a renewal of the 2002 note. The principal amount of the 2005 note was less than the principal amount of the 2002 note as a result of payments made by the Smiths.

In 2006, the Smiths combined indebtedness owed to Troy Bank under several notes, including the 2005 note, into a single note. As a result, a Promissory Note, in the principal amount of $377,949.73, was executed by the Smiths on May 25, 2006. Because of a limitation on the amount of the indebtedness contained in the 2002 mortgage, it became necessary for the Smiths to execute a second mortgage in favor of Troy Bank to fully secure the 2006 note. (Doc. 13, Ex. F). The second mortgage was dated May 25, 2006, and recorded on June 15, 2006, in Coffee County, Alabama. The effect of this was to consolidate into one Promissory Note, all the indebtedness then owed by the Smiths, which was secured by the 2002 and 2006 mortgages.

---

[1] The original loan was made by The Peoples Bank of Coffee County. Peoples Bank merged with Troy Bank in 2008, its successor in interest. *See*, Affidavit of Barry Giles. (Doc. 13). For purposes of simplicity, all references will be to Troy Bank.

On February 2, 2009, three years after the consolidation described above, Coffee Farmers obtained a money judgment against Dennis Smith in the amount of $183,780.20 (Doc. 14, Ex. B, Page 20 of 26).[2] Coffee Farmers recorded a Certificate of Judgment in Coffee County on April 22, 2009. It is noteworthy that the 2002 and 2006 mortgages were made jointly by Dennis Smith and his wife Jan, while the judgment is solely against Dennis Smith.

On January 27, 2012, the Smiths renewed the 2006 note. For purposes of this motion, the Court finds that Troy Bank had both actual and constructive knowledge of the Coffee Farmers judgment at the time it renewed the note in 2012. The 2012 note is in the principal amount of $336,317.44. (Doc. 13, Ex. G).

The evidence is clear and uncontroverted that at the time the 2006 note was renewed in 2012, no additional funds were advanced by Troy Bank to the Smiths. The relationship between the Smiths and Troy Bank had become difficult. The evidence shows that in 2010 and 2011 Troy Bank had property title work done and that notice of a foreclosure sale was published in the newspaper. There is no evidence that Troy Bank actually conducted a foreclosure sale and Coffee Farmers makes no argument that it did. Had Troy Bank proceeded to foreclose its mortgages, we would have a very different priority question here. However, the 2002 and 2006 mortgages were never foreclosed upon, released, or in any way became ineffective. The 2002 and 2006 mortgages were valid when executed and have remained so until this time.

---

[2] The civil action was styled: *Coffee Farmers Cooperative, Inc., v. Dennis Smith*, CV 2008-253, in the Circuit Court for Coffee County, Alabama. Smith moved to set aside the judgment in the Circuit Court but his motion was denied. Smith prosecuted an appeal to the Alabama Supreme Court, which affirmed the judgment. (Doc. 14, Ex. E and F). The judgment in favor of Coffee Farmers is valid and subsisting.

## B. The Smith Bankruptcy

On August 17, 2017, Edward D. Smith filed a petition in bankruptcy pursuant to Chapter 12 of the Bankruptcy Code (Case No. 17-11591, Doc. 1).[3] Smith's wife did not join in the petition in bankruptcy. Smith reports owning 176 acres of farm land, a residence, barn, and grain bin, which he values at $483,000.00 (Case No. 17-11591, Docs. 11, 43). Smith claims an undivided one-half ownership interest in the land with his wife. Smith also reports ownership of a second parcel of land, consisting of 56 acres, which he values at $108,250. Coffee Farmers will not be fully secured if the Troy Bank mortgages are given priority.[4] Smith has filed a Chapter 12 Plan in which he proposes to keep his land, continue farming, and make payments to his creditors under a Plan (Case No. 17-11591, Doc. 30). It is necessary to resolve this priority dispute between Troy Bank and Coffee Farmers before a Chapter 12 Plan can be confirmed.

---

[3] The Debtor filed bankruptcy under his legal name which is James D. Smith. He commonly goes by Dennis Smith, which it the name on all of the notes and mortgages as well as the name on the Coffee Farmers judgment.

[4] A claim secured by a lien on property of the bankruptcy estate is allowed as a secured claim only to the extent of the value of the collateral. 11 U.S.C. § 506(a). To the extent the indebtedness exceeds the value of the collateral, the claim is unsecured. The determination of which lien has priority has real consequences. This is true even where, as here, the Debtor proposes to keep his property and pay a portion of his indebtedness over time.

## II. Law

### A. Jurisdiction

This is an Adversary Proceeding to determine the priority of two mortgages in favor of Troy Bank versus a judgment lien in favor of Coffee Farmers. This Court has subject matter jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). This is a final order.

### B. Summary Judgment

Summary judgment is proper only when there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. Rule 7056, Fed. R. Bankr. P., incorporating Rule 56, Fed. R. Civ. P., *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 365 (1986); *Alexander v. Southern Mills, Inc., (In re Terry Mfg. Co., Inc.)*, 325 B.R. 638, 640 (Bankr. M.D. Ala. 2005).

The initial burden is on the moving party. Troy Bank has supported its motion with affidavits and copies of Promissory Notes and Mortgages. In addition, it provided affidavits which show that the 2012 note is a renewal of the 2006 note. As Troy Bank carried its initial burden, the burden then shifts to Coffee Farmers to show that at least one material fact is in dispute. While it argues that the 2012 note is a future advance and not a renewal, it fails to support that argument with any cogent evidence.

5

### C. The Question of the Priority of the Troy Bank mortgages versus the Coffee Farmer's judgment lien

The question here is whether the Troy Bank mortgages have priority over the Coffee Farmers judgment lien. It does because its mortgages were recorded prior in time. Coffee Farmers' argument, that Troy Bank's indebtedness lost its priority when it renewed its 2006 note in 2012 because it was in fact a future advance, is without merit. In Part C(1) below, the Court will review the rules on mortgage priorities. In Part C(2), the Court will apply these rules to the facts of this case.

#### 1. Mortgage Priority Rules

This case involves the interplay of two rules of mortgage priority. First, is the venerable rule of "first in time, first in right." Second, is a rule, which places a limitation on the first, that, in certain circumstances, future advances made under a mortgage do not have priority over a lien which is recorded at a latter time. The rules, with case citations, are set out as follows.

It is a universal principle that a prior lien is entitled to a prior claim. *United States v. City of New Britain, Conn.*, 347 U.S. 31, 74 S.Ct. 367 (1954); *Rankin v. Scott*, 25 U.S. 177 (1827). Under the venerable "first in time" rule, Troy Bank prevails.

Coffee Farmers argues that the 2012 note is a "future advance" and therefore Troy Bank lost its priority *vis a vis* its 2009 judgment lien. Coffee Farmers cites the rule of *Hampton v. Gulf Fed. Savgs and Loan Assoc.*, 287 Ala. 172, 177, 249 So.2d 829, 834 (1971), "that after notice of

6

the attaching of a junior lien, the senior mortgagee will not be protected in making optional future advances under his mortgage given to secure such advances." *Id.*; *Mobley v. Brundidge Banking Co.*, 347 So.2d 1347, 1349 (1977); *see also Miss. Valley Title Ins. Co. v. Marion Bank and Trust Co.*, No. 11-0538, 2012 WL 5328644, (S.D. Ala. Oct. 26, 2012)(holding that notice of a junior lien sufficient to invoke the rule of *Hampton*, and thereby subordinate the priority of a future advance to an intervening mortgage). This case turns on the question of whether the 2012 note (Doc. 13, Ex. G) is a renewal of the 2006 note (Doc. 13, Ex. D) or whether it is a future advance.

### D. Application of the Law to the Facts

The terms "renewal" and "future advance" are not defined in the mortgages or the promissory notes. The Court will interpret those terms as they are commonly understood. The Court concludes that the 2012 note is a renewal for three reasons. First, returning to the 2012 Promissory Note (Doc. 13, Ex. G), at the top of the Promissory Note it states as follows: "Loan Purpose: Business: Renew LN xxx5700 (Payoff PBCC Ins. & Restructure Farm Debt)." The 2006 Promissory Note is Loan No. 33605700. It is clear on the face of the 2012 note, that it is a renewal. Second, Troy Bank has submitted affidavits from Barry Giles, its President, and Dedra Carnley, a Loan Processing Manager, who are witnesses with knowledge of these transactions and expertise in the field, both of whom offer testimony that the 2012 note is a renewal. Third, Coffee Farmers had an adequate opportunity to conduct discovery and has come up with no evidence in support of its contention that the 2012 note was not a renewal but rather a future advance.

7

Coffee Farmers advances five arguments in support of its claim–that the 2012 note was actually a future advance. First, it argues that it was the intent of the parties that the 2012 note would constitute a future advance, contending that the intent of the parties controls. Whether intent is controlling, or just a factor a court may take into account, there is no evidence here that either the Smiths or Troy Bank intended a that the 2012 note be counted a future advance. Indeed, the evidence is all to the contrary. The face of the note states that it is a renewal and witnesses have sworn that the note was in fact a renewal. Coffee Farmers' first argument falls of its own weight.

Second, Coffee Farmers points out that Troy Bank began the process of foreclosing its mortgages on the Smith's property in 2010. Property title work was done and a notice of foreclosure sale was published in the newspaper. However, Troy Bank did not complete this process. No foreclosure sale was held. Instead, Troy Bank renewed the Smith's existing indebtedness as evidenced by the 2012 note. At most, Coffee Farmers has shown that Troy Bank must have known about the Coffee Farmers judgment at the time it renewed the indebtedness in 2012 from its title work on the Smith's property. Assuming that Troy Bank had this knowledge, this does not have any effect on the question of whether the 2012 note was a renewal.

Third, Coffee Farmers points out that the 2006 note matured on May 25, 2011, while the "renewal note" was not executed until January 27, 2012, some 8 months later. None of the cases cited by Coffee Farmers in its brief supports the proposition that a lapse in time somehow turns a renewal note into a future advance. The indebtedness owed by the Smiths, as evidenced by the

8

Case 18-01068    Doc 16    Filed 01/30/19    Entered 01/30/19 09:12:30    Desc Main
Document      Page 8 of 10

2006 note, did not disappear once the note matured. To be sure, the 2006 note, at some point in time, must have fallen into default as a result of nonpayment. This does not preclude the Court's finding that the 2012 note was a renewal of the 2006 note.

Fourth, Coffee Farmers notes what it calls the "unusual facts" surrounding these transactions. (Doc. 14, p. 10). The 2006 note and the 2006 mortgage were executed as part of what this Court would call a "workout" between the Smiths and the Troy Bank. Workouts between banks and distressed debtors are not at all unusual. Indeed, where one has borrowed money that he cannot repay at the moment, a workout is a rational choice by both lender and borrower. This process should be encouraged. Were the courts to take an unreasonably restrictive approach of what constitutes a renewal, more bankruptcies and more business failures would result. In this case, the 2006 note consolidated several separate debts owed by the Smiths into one note which was secured by two mortgages. The 2012 note was a renewal of the 2006 note, albeit 8 months after it matured. The term "future advance" implies that additional money is advanced to the borrower. The evidence here is undisputed–no additional funds were advanced in 2012. So long as a note is in fact a renewal of a previously executed note, it should be recognized as such.

Fifth, Coffee Farmers makes a frivolous argument on page 11 of its Brief, where it argues that because Troy Bank lowered the interest rate when the 2012 note was executed, that it somehow lost its status as a renewal and became a future advance. (Doc. 14, p. 11). Such an argument should not be taken seriously. When interest rates go down, a bank should be applauded for reducing the interest charged its distressed borrowers. When the consideration for

a new note is money previously advanced under prior notes, a change in interest rate, maturity, or other terms does not change the fact a note is a renewal.

.

### III. Conclusion

Troy Bank holds liens on the Smith's property pursuant to mortgages executed in 2002 and 2006. These mortgages have priority over Coffee Farmers' 2009 judgment lien. The 2012 renewal of the 2006 note was a renewal which did not cause Troy Bank to lose its priority, even if it knew of the Coffee Farmer's 2009 judgment lien. The Court will enter a Declaratory Judgment by way of a separate order.

Done this 29th day of January, 2019.

United States Bankruptcy Judge

c: Jason R. Eubanks, Attorney for Plaintiff
 Collier H. Espy Jr., Attorney for Edward Smith
 Allen C. Jones, Attorney for Troy Bank
 Sabrina L. McKinney, Chapter 12 Trustee